Good morning, Your Honors. May it please the Court, my name is Jim Loeb. Since I represent Dr. Childs, I'd like to reserve five minutes. And if I could, I'd like to start with the issue of the claim that Dr. Childs mislabeled as a Title VII claim, but which he came to realize is really a 1981 claim. I submit that you have two cases decided by this Court which show that it really doesn't matter at all that he mislabeled his claims. This case is clearly controlled by, for example, the Haddock case where Dr. Haddock, a dentist, said, I have a Title VII claim because they didn't give me a license because of my race. And the District Court said, you don't have a Title VII claim. Title VII doesn't apply because a licensing board isn't an employer. So he lost an appeal. His case was thrown out and he appealed. And he persisted in this Court in saying, I have a Title VII claim. And he didn't offer any other rationale. It sort of sounds like maybe even an oral argument the Court offered it to him. Because it says in that case that Dr. Haddock does not rely on 1983. He does not rely on anything else. He relies exclusively on Title VII. And this Court told him again, you don't have a Title VII claim. However, they reversed and sent it back for further proceedings on his 1983 claim because he clearly had a 1983 claim. And that case basically governs here. In a sense, the failure of the litigant in that case is worse than the failure of Dr. Childs here because they didn't even discover where they had their cause of action, not even on appeal. Why do you clearly have a 1981 claim? Because the claim that was pled is about discrimination on the basis of citizenship. And citizenship alienage is recognized as a basis for a 1981 claim. And I don't hear any argument from Microsoft that we don't have a claim from 1981. It's just that we never raised it below and so we're too late and we can't do it. What evidence in the record, though, do we have of that so far? Well, this was dismissed. But the mere fact that he hailed from the United Kingdom? You have clear pled allegations and this claim was dismissed on a 12b6. He pled, you are discriminating against me on the basis. He didn't say, he should have realized that, he didn't say you're discriminating against me because I'm from England. He clearly pled in his complaint, I think it's paragraph 9.2 of his complaint, that you are engaging in a systematic set of discrimination against people who are foreign nationals. They were never misled about this. What's the nature of the discrimination is what I'm getting at. You treat people who aren't American citizens differently. You don't pay them the same, for example. And the Department of Labor actually found that. The pay issue, it just seems to me as nothing. I don't see any evidence that it was due to discrimination. It's just your client wouldn't sign that employment agreement. He pled that you don't pay foreign nationals the same way you pay Americans. The Department of Labor said, you're right, and I find that violation. That's in the record. But here, I'm just trying to respond to Judge Tallman's question. You phrased it to me about what evidence. And I'm trying to say, this is a 12b6 dismissal. At this stage, he doesn't have to prove it or he doesn't have to genuate a material issue of fact. Fair point. But if he did, the Department of Labor found it. The Department of Labor found that you don't pay your foreign nationals medical benefits where you do pay your American citizens benefits. You do discriminate against foreign nationals. So even if I had to read the summary judgment, I think maybe I could have argued that you should enter summary judgment for us. I don't know. Because it's collateral estoppel and the Department of Labor already found it. But I didn't argue that. But it's also similar to the Sagana case where Mr. Sagana said, he said, I have a 1983 claim which rests on an underlying Immigration and Naturalization Act violation. He was wrong. He didn't have one. He didn't have an INA claim because the Marianas was exempt from the INA. On appeal, he realized his mistake and said, I have a 1981 claim. And this court said, you're right. You mislabeled it. It was not a 1983 claim. It was a 1981 claim. We're sending it back for further proceedings. So I think under both those cases, you just have to reverse and send back. How do we come to bear with the fact that after those two Ninth Circuit cases were issued, the Supreme Court issued the Iqbal and Twomley cases? Well, as I understand the Iqbal cases, it's when you plead really, really crazy facts, like these two federal officials conspired to kill me. We aren't going to apply the normal presumption that we have to at this stage of a 12 v. 6 assume that you can prove those facts. If you raise really bizarre facts like that, it's got to be plausible and you've got to get more specific. This is not like that. And at this point anyway, even if he – because you do have a record, which eventually did get stuffed into it. It doesn't need to be, but I don't think the Iqbal stuff is applicable here. As I understand it, the entire claim is contained in paragraph 9.2? I think there are other places where that claim appears. Can you help me? Because it seems to me that Iqbal and Twomley at a minimum require more than a statement that I have a claim under. What I have jotted down is the evidence, excuse me, excerpts of record page 36, and there's allegations of violations of the Immigration and Naturalization Act in – Is that in his complaint? Yes. I'm sorry. In paragraph 12.2, also in paragraph 3.33, those allegations are made. I'm sorry, 12.2 and what was the other one? 3.33, paragraph of his complaint, which is excerpts of record page 28. He pled that you violated the regulations in 20 Code of Federal Regulations, Part 655, and they did. The Department of Labor already found that they did. But is that enough under Iqbal and Twomley to simply say, here's a statute and here's a regulation and the defendant violated it? I think that it is when you're not in the strange Iqbal land of – because Iqbal says it has to be plausible, and if you plead something that is inherently implausible, we're not going to just apply our normal rule. But even in Iqbal and Twomley, there were some factual allegations beyond a bald assertion. He pled you didn't pay me for months. You waited three months to pay me. That's a violation of the Immigration and Naturalization Act. He pled that specifically. They admitted it. They didn't pay him for a while. That's a violation of the INA. So that's a specific allegation he pled. That's not a Title VII violation. No. I've conceded to you that he doesn't have a Title VII violation. I'm sorry, a 1981 violation. Well, when you pay your American citizens and you don't pay your foreign nationals, it is a 1981 violation. And he pled you didn't pay me. He pled you don't give me medical benefits like you give your Americans. And he pled that very specifically. So I think you have to reverse that one. I'd like to talk about the tort of wrongful termination. I think the problem of the district court's ruling there essentially is twofold. First of all, I think he misread the decision in Bennett v. Hardy, which actually supports us. And second of all, he only looked at sort of one of the three areas of public policy. There were two statutes and one set of regulations that Dr. Childs pointed to, and the district court only looked at one of them. I think it is helpful to think about what actually went on in the Bennett case. There were two sisters in the Bennett case, Laura and Wanda. Laura was fired and said, I was fired for age discrimination. You're firing me because I'm old. Wanda said, you shouldn't fire my sister because she's old, and she got fired. And she said, I was fired in retaliation for opposing the age discrimination against my sister. There is nothing in the Washington law against discrimination that would help Wanda in that situation. The retaliation claim that Wanda was raising was outside Chapter 60. So what? Wanda won. Wanda pointed to a statute outside Title 60, which the court agreed created public policy, which was violated, and said, you win anyway. Now, in this case, Dr. Childs pointed first of all to something in Chapter 46-100. Chapter 46-100 has its own anti-retaliation provision. It actually makes it a crime to retaliate against anyone who is fired for complaining about a violation of that chapter. Counsel, am I right, though, that you raised that for the first time on the motion for reconsideration? I'm not sure, Your Honor, about whether they made that exact argument about 49.46.100. Perhaps they didn't make it at all in the district court. I think I may be the first person to sort of point to that subsection and say, it's got its own. Well, if you're making it for the first time here, that seems even more problematic. But I guess let's give you the benefit of the doubt. You raised it in the motion for reconsideration. Aren't we just applying an abuse of discretion standard to the district court's ruling on that front? No, because the district court is just wrong about what Bennett v. Hardy says. Microsoft says if it's outside this chapter under Bennett v. Hardy, Dr. Childs loses. And I say Bennett v. Hardy says Wanda Bennett wins, even though it's outside the chapter. It was outside the chapter in her case. That was a different statute. The question, though, is put aside the merits. The question is whether you should have, or not you, but his lawyer, should have raised that in the first instance, not for the first time on a motion for reconsideration. And I guess what I'm asking is don't we have to give some deference to the district court's ruling that you had this argument and was available to you, you haven't given me any reason why you didn't raise it initially, and I'm not going to consider it now. Well, I think that particular argument, yes, I think maybe was not even raised in the reconsideration motion. But Bennett v. Hardy was briefed. That didn't await the reconsideration motion. And the judge just has it wrong. Bennett v. Hardy says that in general. But you're collapsing the two, I think, in response to Judge Watford's question. You're asking us to look underneath the motion for reconsideration and go back to the merits of the original district court ruling. But if the argument isn't raised until the motion for reconsideration, the standard of review is abuse of discretion and not reconsider, right? Yes. But I don't think that the premise, that the argument that you're reading Bennett v. Hardy was wrong was not raised until the reconsideration motion. I don't think so. We can look and see. Yeah, we can make that. Bennett actually supports us. We hear your argument. Can you address for me the attorney-client privilege? As I read the record, it looked to me like at one point the argument was, this is not attorney-client privilege. But now that argument seems to be, it is but the crime-fraud exception. That's right. This is totally new on appeal. Not a word was briefed about this crime-fraud exception in the trial court. And I agree with that. Okay. And I'm only asking you that should you reverse and send any of the three causes of action that I've outlined back for further proceedings that you just instruct the district court that he's not foreclosed from raising the crime-fraud exception in further proceedings below. That's all I'm asking there. All right. You want to reserve some rebuttal time? I think I will reserve the rest of my time. Okay. Thank you, Mr. Loveson. Leishman. Good afternoon. May it please the Court. Roger Leishman. Good morning. I hope it's not yet. I know it feels like we've been here forever. I have been up for a while. Okay. I brought my kids to school. I would like to introduce my client and colleague, Ian Cooper, who is an attorney at Microsoft. I hope you noted that he's been up for a long period of time. Okay. Good. That should be clear. As Judge Watford observed, it's problematic when arguments appear for the first time on appeal. And, in fact, any appeal, it's essential that you look at what is the relevant standard review for each issue. And in their briefing, Dr. Childs has said that the standard review for everything is de novo. That's simply not the case. And we have to, as a threshold, we have to recognize arguments that were made in opposition to the motion to dismiss and the motion of judgment are reviewed de novo. Those are legal questions. But arguments that were raised for the first time, like the statutory section that we just heard a discussion of, were raised on reconsideration. You can't collapse that with the merits. That's abuse of discretion. And, finally, it is indeed problematic because arguments that show up for the first time in this court require a showing of exceptional circumstances. So before I go in turn to each of the arguments in the standard, if I have a moment, I'd like to highlight a couple of critical facts which underlie most of the claims. It's important to remember that in October 2008, Dr. Childs was in Canada and he received an offer to accept employment in the United States. That offer letter said, if you accept this, you will end your Canadian employment. It's an at-will employment. You have to sign the same U.S. employment agreement that everyone else signs it. He signed that offer letter. And, in fact, he signed that offer letter after an exchange of e-mails. And he specifically said, well, what's the significance of my Canadian documents? And they said, your employment will be terminated. Minutes later, he signed that. Unfortunately, he moved to the United States without signing the agreement. It put everyone in a difficult situation. But, eventually, he did sign that employment agreement, and it's undisputed that the U.S. employment agreement that he signed in March 2009 is an enforceable contract. And that fact in this case renders on the merits and on the substance virtually all of his causes of action fail as a matter of law. Well, Counsel, since you delved into the facts, there are some e-mails here that I would just say may be taken out of context or troubling. They don't cast your client in a favorable light. And maybe you can just address a little bit about the larger context into which those e-mails fell. The question that was faced with Microsoft, there was this fundamental question, what do you do with an employee who won't sign the agreement? And that was resolved. But there's also the question of what do you do with an employee who's not doing any work? And if you look at, for example, a service record 330, out of 1,700 items, he performed two that his team had worked on. So this is an employee who there's no question, there's no suggestion that he was not unproductive, and there's no suggestion that Microsoft didn't correctly identify problems with getting along with his team. In his performance review, he acknowledged, Dr. Childs acknowledged, he needed improvement in productivity and he hadn't even started work on two of the areas. So the question, of course, would be what are all these facts relevant to in this case? If we were to be zeroing in on the public policy, wrongful discharge in violation of public policy, the fourth element of did Microsoft have an overriding justification for what it did, if any of these claims, if either court had reached that, there wouldn't be an issue of fact, because the evidence is overwhelming that, pardon me? So why not just fire the guy? Why all the talk about, well, we need to now, I can't remember all the buzzwords, but they weren't good. We need to button up the reviews. We need to do this. We need to finish him out. Yeah, exactly. So why not just fire the guy? And anyone who's worked with employees in an HR situation, just because you can fire someone doesn't mean that you're going to. And he was given every chance to succeed. I'm sure this happens a lot of times with a lot of employers. You may personally believe this person is never going to succeed. But you still give him a chance. You still do these evaluations. You still, as in this case, do a work plan. And there was always a chance that he could have succeeded. It was implausible, and the sentiments expressed in those exchanges reflect that these people, after 1,700 work items and him producing two,  I think it's laudable that they tried. They did that. And, frankly, most of our HR departments would say the same thing. If there's not an immediate crisis, give him a chance. Make clear what you're communicating. And in this case, they made it very clear, and he completely failed. And in August 2009, he was terminated just like that. Those e-mails suggest a decision made much earlier to get rid of this guy, whether for legitimate reasons or not. But I didn't read them in the way you just described them as, well, we want to give him every opportunity. Let's sort of show him the roadmap to get back on track. They made it sound like we're getting rid of this guy, now let's get our story straight so we have some justification for when the time comes to justify it. Well, I guess where I'm trying to understand your question better is I need to understand which cause of action we're talking about so I can answer the question of whether they're material to that. For example, a 1981 claim, that's an intentional tort, but it's an intentional tort of discrimination. And they don't go to the question of was he terminated because of his immigrant status. I think it's more toward the discharge and violation of public policy because it is the fact, as he points out in his e-mail or e-mails, that the timing could raise some questions. He starts suggesting that you're in violation of one or more public policies. He's going to go to the authorities to complain about it if something's not done. And then, in his mind at least, all of a sudden he starts being told it doesn't look like things are going so well for you, your performance is bad, this and that. That's the point at which it seems as though a decision was made, we need to get rid of this guy, and one could infer that, oh, maybe the decision was made because he's threatened to complain about this. But we have to look at what is the public policy at issue. In fact, that's the first element. It's not just a pleading suggestion. It's an element of the claim, the cause of action. You identify a particular Washington public policy in a specific judicial finding or a specific statute. And what's so troubling and problematic about this case is the one that's identified in the complaint, and the one that we moved on for summary judgment on, and that Dr. Childs responded, was the Washington Law Against Discrimination. That was what was litigated in the trial court. The district court had a chance to hear both sides' arguments. Dr. Childs, for whatever reason, chose to put his eggs in the basket of the Washington Law Against Discrimination protects me because this is national origin discrimination. And the court granted summary judgment and dismissed that claim because as a matter of law, the Washington Law Against Discrimination doesn't protect people on the basis of alienage, and his national origin claim failed as a predicate for the wrongful discharge tort. At the end of the day, that's how that was resolved, and he does not appeal from that ruling. Is that the 49.60.210? 210. Okay. Exactly. So that was the argument in the trial court. It's not even on appeal. So we have to move to the new one. So on reconsideration, we get two new ones. The first one is always have to look down to make sure I have the right number because they're all a bunch of fours and nines. The RCW 4449.140. And that is a statute about the assignment of inventions. Again, this was not erased until reconsideration, so the standards of user discretion. But it fails as a matter of law because it's not even relevant to this case.  If you look at the plain language of the contract, it's simply not the situation. The statute requires employers to provide certain kinds of notice, and it says if you enter into a contract under which the employee assigns an invention that's not part of their work, that that's invalid. But these agreements don't do that. They're just standard agreements that say that if you're working on something, you license it to Microsoft, and if you have an invention, you're not assigning to Microsoft, and here's your chance to preserve the record that you claim to have an invention. His claim, his list are quantum mechanics, differential equations, and the dispute that bogged everyone down in signing the agreement was he was saying, I want Microsoft to say that I own these, and Microsoft has no ability to claim any right to differential equations. Microsoft couldn't do that. He'd already agreed he was going to sign the existing contract. He saw a lawyer, and after he saw the lawyer in March, he signed the existing contract. So coming back to your point, even if we reached past the abuse of discretion, the statute that he relies on cannot be the basis of a wrongful discharge and violation of public policy, because it simply doesn't apply here. And then the final point, and when you have too many good arguments, you just get carried away. But it's important to flag the jeopardy prong, the second prong of the wrongful discharge and violation of public policy. The first one was clarity. The fourth one was Microsoft having a justification. But the key for many of the issues here is you cannot rely on this tort. It's an extraordinary tort. It's available because the at will document is so important, we as litigants, the courts, don't casually carve out exceptions to the at will doctrine. So you have to establish that it's necessary to do it in order to further the policy. And here the policy of not making people sign over their inventions, we don't need to give Dr. Childs a cause of action for his termination in order to vindicate the policy. The statute itself provides for a remedy. The policy itself is not implicated. He simply cannot and would not satisfy the jeopardy prong. But I thought you eventually let him submit the lengthy list he wanted to anyway. The list, yes, and in Canada as well. He identified a list of things that he was working on. And Microsoft was saying, if you want to file a patent about those, you have identified those to us. But we are not going to countersign and say, one, that these are inventions, because that's false. And number two, we're not going to say, if there's something in Bing that involves a differential equation, that somehow you own it. But Microsoft couldn't and didn't. And after Dr. Childs consulted with his counsel, he signed it. The second new proposed public policy also came up on reconsideration. And that is the RCW 4946-100. Again, it appears for the first time a reconsideration. And this is the wage retaliation statute. There is a policy against retaliating against people because they complain about not receiving their full wages. But again, first it was abusive discretion standard applies because it was brought up in reconsideration. But again, the jeopardy prong is particularly relevant here. There is a panoply of remedies available. For example, the Fair Label Standards Act has a specific statute, 28 U.S.C. 215, that provides a comprehensive remedy to vindicate that policy. We don't need to create an extraordinary wrongful discharge remedy in order to vindicate it. So if that had been brought up below on the merits, that would have been the result. The final on the wrongful discharge, before I turn to the 1981 claim I would like to, is the Federal Immigration Statutes. And again, that wasn't brought up as a predicate for the wrongful discharge until this appeal. There's no showing of extraordinary circumstances. There's no reason that this Court needs to address it. On the, I'd like to use my last couple of minutes and address some of the issues that came up on the 1981 claim because there are several misstatements that counsel made. One is the suggestion that TWAMBI is relevant, that this was an issue that was part of the TWAMBI motion. It was not. It was the Title VII claim, and the disparate impact claim were dismissed on summary judgment. They were not part of the motion to dismiss, number one. Number two, this is an entirely new claim. It appears for the first time on appeal. That's conceded. There's no suggestion of why extraordinary circumstances exist. Number three, and this is particularly telling, is that the fair notice discussion of these cases is absolutely inapposite here because Dr. Childs disavowed any such claim based on alienage. And that's the claim that he's seeking to do there. And it's quoted in our brief on supplemental extra record, page 24. I'll quote this. Dr. Childs has not brought any claim against defendant on the basis of his British citizenship. That was in the opposition to the motion for summary judgment. On reconsideration, Excerpt of Record 939, quote, his immigration status was not the protected class. And this claim, quote, based directly on national origin, not citizenship. The cases that are cited here, in fact, are cases where the litigant referred to the statute below in Sagana and Fortuna. In the Haddock case, it was a motion to dismiss. It was a pro se civil rights plaintiff. It's a very different situation. But again, the claim, the notice that was there was not a situation as we have here where the party specifically said, I'm not suing you for this. You can't come to this court and turn around and say, oh, it turns out I would like to sue you about this after all. Time is up. The court doesn't have any additional questions. Any further questions for Mr. Leishman? Thank you. No, I think not. Mr. Lobson, I think you have a couple minutes left. A couple of things. First of all, counsel says that the 49.44.100 statute has comprehensive remedies, has remedies that are available. Not for being fired in retaliation for sticking up for your invention rights. It doesn't have a remedy for that. The only remedy it has is invalidating an assignment of an invention right, and that's why the case they cite, Waterjet, is not on point. Just one of the last things he said was to touch on the judicial estoppel argument that he makes, citing the Ibrahim case, that you can't say one thing to one court and another thing to another court. Actually, the case he cites, there was an attempt to apply judicial estoppel against the United States government, and this court refused to apply judicial estoppel, saying judicial estoppel only applies to intentional manipulation of the courts in a way to gain tactical advantage. Why shouldn't we find that here, though, where he expressly disavows in his pleadings that that's what he's pursuing? Because it's the same as the Ibrahim case. You can't possibly find that he intentionally did this to secure an advantage when, in fact, it secured a disadvantage, just like in Ibrahim, where this court said the government made a mistake. Judicial estoppel does not apply to mistakes. He's wrong. And it's like his attorney was seeing this as national origin, national origin, national origin, and yet he's not thinking that they hate the English. You know, the problem I'm having with your argument is this case is a textbook example of moving theories that get shot down at one stage of the litigation and then a new theory emerges on reconsideration, and yet now we're hearing, as you concede, newer theories at the court of appeals level. And at some point, what do we do with the rules of appellate procedure and the rules of civil procedure for the orderly administration of these kinds of cases? Well, I agree with you, Your Honor, that it's true that it's a shifting set of arguments. But why shouldn't we say no, Dr. Childs? You've shifted your theories one time too many, and your theories stop here. Because Haddock decided that even if you never shift your theory, and even if it's the court that figures out you're making the wrong argument, you still get to go back because they haven't been unfairly prejudiced. They knew all along that what he was complaining about is he's not a citizen and that he just wasn't linking it up to the right statute. So they're saying that because he didn't label it with the right statute, they should never even have to defend this fairly serious allegation that they are deliberately subverting the immigration laws and discriminating against non-citizens. And that would be a miscarriage of justice, which is recognized as one of the three exceptions to the other thing that they talk about when they cite the community house case about motions for reconsideration. The last thing I want to say in 27 seconds is that— You're 30 over, but I'll give you one more point. I read it the wrong way. You're not the first counsel to do that. The district court never even looked at the regulations which implement the Immigration and Naturalization Act. And they were based, and they were pled, and never even looked there. And they have a very specific statement that no employer shall discharge an employee because he disclosed information to his employer that he reasonably believed there was a violation of this act, and he did that. And the district court never even analyzed that. Thank you. Thank you very much, Mr. Loeb, since the case just argued is submitted.
judges: Gleason, Tallman, Watford